NEM:MND

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | C O M P L A I N T |
| - against - | (18 U.S.C. §§ 922(g)(1), 924(c); 21 U.S.C. §§ 812, 841) |
| SHAWN MARSHALL, | |
| Defendant. | 24 MJ 134 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

MOLLY JASKOT, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

On or about November 7, 2024, in the Eastern District of New York and elsewhere, the defendant SHAWN MARSHALL knowingly and intentionally distributed and possessed with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1), which offense involved mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(C); Title 18, United States Code, Section 2)

On or about November 7, 2024, in the Eastern District of New York and elsewhere, the defendant SHAWN MARSHALL, did knowingly and intentionally possess a firearm during and in relation to a drug trafficking, to wit: the crime set forth above.

(Title 18, United States Code, Section 924(c)(1)(A)(i))

On or about November 7, 2024, in the Eastern District of New York and elsewhere, the defendant SHAWN MARSHALL, knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit: (i) a Smith & Wesson M&P Bodyguard Revolver, .38 Special, with serial number CZX6753; (ii) an SCCY Industries CPX-2 Pistol, 9mm, with serial number 126468; and (iii) a Jimenez Arms, JA 380 pistol, .380 caliber, with serial number 401835 and ammunition, to wit: (i) 49 Winchester 9mm Ammo bullets; (ii) 25 HSM Cowboy Action Cartridges 38 Special Ammo; and (iii) five Federal 38 Special bullets.

(Title 18, United States Code, Section 922(g)(1))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.   I am a Special Agent with the FBI and have been since 2023. During the course of my employment with the FBI, I have been involved in the investigation of numerous cases involving illegal firearms possession and narcotics distribution. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

---

[1]   Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2. Based on my review of criminal history records pertaining to the defendant SHAWN MARSHALL, I have learned that on or about November 13, 1991, in Kings County Supreme Court, SHAWN MARSHALL was convicted of manslaughter in the first degree, in violation of New York Penal Law Section 125.20, and sentenced to eight to 24 years' imprisonment. SHAWN MARSHALL served approximately 15 years in prison for that conviction, from his arrest in approximately November 1991 until his release to parole in approximately December 2006.

3. Based on my involvement in this investigation, including my conversations with other law enforcement officers, I have learned that SHAWN MARSHALL resides at a particular residence located in an apartment building in Brooklyn, New York ("Residence-1"). This assessment is based on, among other things:

   a. FBI surveillance teams have observed MARSHALL enter and exit Residence-1 several times since at least on or about June 19, 2024 up to and including the date of this Complaint. These observations included occasions when MARSHALL would enter Residence-1 at night and would not be observed again until exiting Residence-1 in the morning.

   b. Subscriber records provided by a telephonic service provider indicate that MARSHALL uses at least two cellphones, with call numbers ending in -8228 (the "8228 Number") and -4371 (the "4371 Number"). Based on cellphone geolocation data for the 8228 Number and the 4371 Number, which was obtained pursuant to judicially-authorized search warrants, I have learned, in substance and in part, that both the 8228 Number and the 4371 Number have been located in the vicinity of Residence-1 on numerous occasions in or about October and November

2024, including during times between the hours of approximately 1:00 a.m. and 7:00 a.m.

4. On or about November 7, 2024, pursuant to a judicially-authorized search warrant, I and other law enforcement agents searched Residence-1. Law enforcement officers entered Residence-1 at approximately 3:00 a.m. Based on my participation in that search, I observed that, upon entry into Residence-1, there is a living room and an adjacent kitchen, as well as three bedrooms. SHAWN MARSHALL, the defendant, was located in the living room. Four of MARSHALL's family members also were present in Residence-1 at the time of the search; with the only other adult present in Residence-1 being MARSHALL's spouse. Law enforcement officers informed MARSHALL that he was not under arrest, and handcuffed MARSHALL for safety purposes while conducting the search. When the search was concluded, law enforcement officers uncuffed MARSHALL, who then remained in Residence-1 until approximately 5:00 a.m., when he departed.

5. During the search of Residence-1, I and other law enforcement officers seized, among other things:

    a. A black backpack ("Backpack-1"), which was hanging on the exterior of a closet located in the living room of Residence-1. Backpack-1 had what I recognize to be a logo for the "DOT," or the New York City Department of Transportation. Based on my involvement in this investigation, I have learned that SHAWN MARSHALL, the defendant, works for the DOT, and in the course of the search, MARSHALL also acknowledged being employed by the DOT. Inside Backpack-1, law enforcement officers recovered, among other things:

i.  Approximately 23 grams of a white, powder-like substance, packaged in a small plastic bag, within a larger plastic bag.  The drugs, on an electronic scale is pictured below.  Agents field tested the substance, which tested positive for the presence of cocaine.  Based on my training, experience, and participation in this investigation, as well as my conversations with other law enforcement officers, I believe that the way in which the cocaine was packaged is consistent with the way drugs are packaged for distribution. Further, I have also learned that individuals involved in narcotics trafficking often use scales to weigh and package narcotics for distribution.



ii.  A hand-written list that reads, in part, "STEPS #1 Weight Mold // STEP #2 Weight all together // STEP # Subtract weight of all mold from material // Then X by 30," with numbers written below (pictured below).  Based on my training, experience, and participation in this investigation, I believe that this list appears to be a drug ledger, *i.e.*, a record used by individuals who

traffic narcotics to memorialize amounts and prices of narcotics, including amounts that have been or are to be sold.

 

iii. A scale, which is the rectangular black object visible on the side panel of Backpack-1. Pictured below is a zoomed-in version of the photograph of Backpack-1 on the right, above, in which the scale is visible (circled in red, below). Based on my training and experience, I have learned that individuals involved in narcotics trafficking often use scales, such as the one pictured above recovered from Backpack-1, to weigh and package narcotics for distribution.

6



  b. Three firearms, described as follows and pictured below:

    i. A Smith & Wesson M&P Bodyguard Revolver, .38 Special, with serial number CZX6753 ("Firearm-1"), which was recovered from a locked safe located in MARSHALL's bedroom, and was loaded with 5 Federal 38 Special bullets ("Ammunition-3"). Additionally, according to my review of law enforcement records, Firearm-1 is reported as stolen. Further, Firearm-1 was surrounded by, among other things, stacks of $20 bills wrapped in rubber bands and paper wrappers apparently for amounts of cash United States currency in the amounts of $5,000, $1,000, and $500 (pictured below). In total, the safe contained approximately $1,522 in cash. Based

on my training, experience, and participation in this investigation, I believe that the $20 bills wrapped in rubber bands depicted in this picture are consistent with narcotics proceeds and the way narcotics proceeds are maintained; and that, more generally, narcotics proceeds often are maintained in large amounts of cash bundled by amounts and denominations.



ii. A SCCY Industries CPX-2 Pistol, 9mm, with serial number 126468 ("Firearm-2"), which was recovered from inside a closet doorframe located in what MARSHALL identified as his bedroom, which was loaded, and was stored along with two packages containing (i) approximately 49 Winchester

9mm bullets (pictured below) ("Ammunition-1") and (ii) approximately 25 HSM Cowboy bullets ("Ammunition-2"):

 

iii. A Jimenez Arms, JA 380 pistol, .380 caliber (Firearm-3), which was recovered from inside the closet located in the entryway to the living room on which Backpack-1 was hanging on the outside door (pictured below).



   c. Two safes, including the safe described above, *supra* ¶ 5(b)(i), which were both located in MARSHALL's bedroom and both of which were locked. The safes each were approximately the size of the one pictured above, in which Firearm-1 was recovered. *See supra* ¶ 5. MARSHALL provided the PIN to enter the second of the safes, but declined to do so for the safe in which Firearm-1 ultimately was found. With respect to the safe in which Firearm-1 was found, MARSHALL stated, in substance, that he could not access the safe and that there was nothing inside. Based on my training, experience, and participation in this investigation, I know that individuals involved in drug trafficking, and who possess firearms and other contraband, sometimes store those materials in safes; further adding to the inference that was the case here, with MARSHALL, is that there were multiple such safes stored in Residence-1.

6.  According to a report of investigation prepared by a special agent with the Drug Enforcement Administration ("DEA") ("Agent-1"), on or about January 22, 2019, Shawn Marshall was arrested by the Sri Lanka Police Narcotics Bureau ("SLPRB") in Colombo, Sri Lanka, in connection with the seizure of approximately 92 kilograms of heroin. According to Agent-1, the SLPRB observed an individual ("Individial-1") depart an apartment located in Colombo, Sri Lanka, and travel to another location where he delivered a bag to two other individuals. The SLPRB searched the bag and recovered approximately one kilogram of heroin.

   a.  SLPRB then searched the apartment, where they discovered Marshall, another individual ("Individual-2"), approximately 91 kilograms of heroin, and an iPhone belonging to Marshall and assigned the 4371 Number, among other things.

   b.  Marshall was later interviewed by Agent-1 and another DEA agent after being advised of his *Miranda* rights, and stated among other things, that he did not have any knowledge of the seized heroin. Marshall claimed that he travelled to Sri Lanka in approximately late November 2018 to meet an Australian girlfriend and that he first met Individual-1 and Individual-2 after arriving in Sri Lanka.

   c.  From New York State criminal history records, I have learned that MARSHALL and Individual-1 were both incarcerated in the same correctional facility in New York State between approximately June 1996 to April 2002.

   d.  [Individual-2] and Marshall are U.S. citizens, and [Individual-1] is a citizen of Afghanistan who had immigrated to the United States when he was a child but was deported after serving 14 years in prison.

7.  Based on my training, experience, and participation in this investigation, I believe that the materials found in Residence-1 establish probable cause to believe that SHAWN

MARSHALL is involved in drug trafficking, that he possesses firearms in furtherance of that activity, and that he was illegally in possession of firearms and ammunition after having previously been convicted of a felony. The reasons for this include, among other things, that Backpack-1, bearing "DOT," which is MARSHALL's employer, contained cocaine, an apparent drug ledger, and a scale. Further, the cocaine recovered from Residence-1, contained in Backpack-1, was packaged in a way that is consistent with distribution. This inference is further strengthened by the apparent ledger and scale, which were contained in Backpack-1 along with the cocaine. Also recovered in Residence-1 were three firearms, including Firearm-1, which was stored in a locked safe along with approximately $1,522 in cash; and Firearm-2, which was located in a closet in MARSHALL's bedroom. The cash was bundled and surrounded by cash bundling materials, which is consistent with the way drug trafficking proceeds are maintained. In addition to the three firearms in Residence-1, law enforcement also recovered as two boxes of ammunition, i.e., Ammunition-1 and Ammunition-2, along with some additional bullets that were located in Firearm-1 i.e., Ammunition-3. Accordingly, and for the reasons stated herein, I believe there is probable cause to believe that MARSHALL is involved in narcotics trafficking and possesses and uses firearms in furtherance of that activity, and was illegally in possession of firearms and ammunition having previously been convicted of a felony.

8. Based on my conferral with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), I have learned that Firearm-1, Firearm-2, Firearm-3, Ammunition-1, Ammunition-2 and Ammunition-3 each was manufactured outside of the State of New York.

WHEREFORE, your deponent respectfully requests that the defendant SHAWN MARSHALL, be dealt with according to law.

/s/ Molly Jaskot
MOLLY JASKOT
Special Agent, FBI

Sworn to before me this
7th day of November, 2024

LLO

EASTERN DISTRICT OF NEW YORK

13